**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN AUTOMOBILE | ) | |
| INSURANCE COMPANY, a Missouri | ) | |
| corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  09 C 1589 |
| v. | ) | |
| | ) | |
| B.D. MCCLURE and ASSOCIATES, | ) | |
| LTD., an Illinois corporation, BRIAN D. | ) | |
| MCCLURE, an individual, DALE J. | ) | |
| SIPPEL d/b/a Genie Temporary Services, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On March 13, 2009, Plaintiff American Automobile Insurance Company ("American

Automobile") originally filed this lawsuit, and on June 30, 2010, American Automobile filed the

present two-count Third Amended Complaint for Declaratory Judgment against Defendants B.D.

McClure and Associates, Ltd., Brian McClure (collectively "McClure Associates"), and Dale

Sippel d/b/a Genie Temporary Services (collectively "Genie") based on the Court's diversity

jurisdiction.  *See* 28 U.S.C. § 1332(a)(1).  Also on June 30, 2010, McClure Associates filed a

three-count First Amended Counterclaim for Declaratory Judgment seeking coverage under the

relevant insurance policies.  McClure Associates raised two additional claims, including a claim

for improper claim practices and a claim for damages for vexatious and unreasonable delay both

pursuant to 215 ILCS 5/155.  On July 12, 2010, Genie filed its Answer to American

Automobile's Third Amended Complaint and Counterclaim for Declaratory Judgment seeking

coverage under the relevant insurance policies.

Before the Court is American Automobile's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants American Automobile's motion as to both Counts I and II of its Third Amended Complaint for Declaratory Judgment. Because the Court grants American Automobile's summary judgment motion as to its declaratory judgment claims, the Court dismisses with prejudice McClure Associates' counterclaim based on the insurance coverage (Count I) and Genie's similar counterclaim for declaratory judgment. Furthermore, because there was a bona fide dispute concerning insurance coverage under the relevant insurance policies, the Court dismisses McClure Associates' counterclaims for improper claim practices (Count II) and vexatious and unreasonable delay (Count III) as a matter of law. Accordingly, the Court dismisses this lawsuit in its entirety.

## BACKGROUND

### I.     Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule

56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). The Court may disregard statements and responses that do not properly cite to the record. *See Cichon,* 401 F.3d at 809-10; *see also Raymond v. Ameritech Corp.,* 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). Moreover, it is well-established that courts may only consider admissible evidence in determining motions for summary judgment. *See Berry v. Chicago Transit Auth.,* 618 F.3d 688, 690-91 (7th Cir. 2010); *Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009). Finally, allegations made in a complaint are not evidence for summary judgment purposes. *See Nisenbaum v. Milwaukee County,* 333 F.3d 804, 810 (7th Cir. 2003) ("Allegations in a complaint are not evidence"); *see also Tibbs v. City of Chicago,* 469 F.3d 661, 663 n.2 (7th Cir. 2006). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

American Automobile is a Missouri corporation with its principal place of business in Missouri. (R. 88, Pl.'s Rule 56.1 Stmt. Facts ¶ 1.) McClure Associates is an Illinois corporation with its principal place of business in Lisle, Illinois. (*Id.* ¶ 2.) Brian McClure is a citizen of the State of Illinois. (*Id.* ¶ 3.) Genie, a division of J.E.S. Personnel Consultants, Inc., is a Delaware

corporation with its principal place of business in Joliet, Illinois. (*Id*. ¶ 4.) Dale Sippel is a citizen of the State of Florida. (*Id.* ¶ 5.)

McClure is a licensed insurance broker in the State of Illinois and the owner and agent of McClure Associates. (*Id*. ¶ 8.) In late 2005, McClure Associates began soliciting and selling workers' compensation coverage to employers under a program of insurance offered by Administrative Employers Group ("AEG"), a professional employer association. (*Id*. ¶¶ 9, 10.) McClure Associates stopped selling AEG insurance in or about May 2007. (*Id*. ¶ 11.) On July 5, 2007, the Illinois Department of Financial and Professional Regulation, Division of Insurance, entered a Cease and Desist Order prohibiting McClure Associates from soliciting and selling AEG insurance. (*Id*. ¶ 12.) On April 21, 2008, the Circuit Court of Cook County, Illinois entered an order of liquidation with a finding of insolvency against AEG. (*Id.* ¶ 15.)

On or about June 1, 2007, McClure Associates enrolled in American Automobile's "Insurance Agent Errors and Omissions" policy that provided coverage for the period of June 1, 2007 until June 1, 2008. (R. 100, Defs.' Rule 56.1 Stmt. Add'l Facts ¶ 2; Pl.'s Stmt. Facts ¶¶ 26, 27.) American Automobile also insured McClure Associates under two renewal policies – one from the period of June 1, 2008 until June 2, 2009 and the other from June 1, 2009 to June 1, 2010. (Pl.'s Stmt. Facts ¶ 28.) On February 19, 2008, McClure Associates notified American Automobile that it had begun to pay workers' compensation claims out of its own pocket as they were tendered to McClure Associates for coverage. (Defs.' Stmt. Add'l Facts ¶ 11.) McClure Associates, however, did not have a contractual obligation with any of its clients to pay their claims directly in the event that AEG became insolvent. (Pl.'s Stmt. Facts ¶ 17.) Although American Automobile never gave McClure Associates permission to pay the AEG claims

4

directly, McClure Associates tendered the workers' compensation claims to mitigate any legal damages.  (*Id*. ¶ 19; Defs.' Stmt. Add'l Facts ¶ 15.)

On September 21, 2009, Genie filed a lawsuit against McClure Associates in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois, Case No. 09 L 800.  (Pl.'s Stmt. Facts ¶ 20.)  According to the state court complaint, McClure Associates was Genie's exclusive insurance broker for workers' compensation coverage in 2006 and placed Genie's workers' compensation insurance with AEG.  (*Id*. ¶ 22.)  Genie claims that in 2008 it discovered that it did not have valid workers' compensation insurance and that AEG was not an authorized, licensed, or permitted insurance carrier in Illinois.  (*Id*. ¶ 23.)  The state court complaint specifically alleges two causes of action against McClure Associates: (1) a claim for professional negligence; and (2) a claim under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.*  (*Id.* ¶ 24.)  In the state court lawsuit, Genie seeks compensatory damages for the expenses that it incurred or will incur as a result of McClure Associates' placement of Genie's coverage with AEG and AEG's inability to pay those claims directly.  (*Id*. ¶ 25.)  On December 8, 2009, McClure and McClure Associates sent a notice to American Automobile that they intended to defend themselves in the state court action.  (Defs.' Stmt. Add'l Facts ¶ 13.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

In Count I of its Third Amended Complaint, American Automobile seeks a declaration that it has no duty under McClure Associates' initial Insurance Agent Errors and Omissions policy and the renewal policies (the "policies") to defend or indemnify for the AEG claims. In Count II, American Automobile seeks a finding that the policies do not provide McClure Associates coverage for the state court lawsuit brought by Genie. American Automobile specifically argues that the relevant policies' insolvency exclusion unambiguously bars coverage for any claims made against McClure Associates arising out of its sale of AEG insurance. American Automobile also maintains that the policies do not provide coverage for the payments McClure Associates voluntarily made on the AEG claims.

The parties do not dispute that the substantive law of Illinois governs this lawsuit based on diversity jurisdiction. "Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Twenhafel v. State Auto*

*Prop. & Cas. Ins. Co.,* 581 F.3d 625, 628 (7th Cir. 2009) (citation omitted); *see also Schultz v. Illinois Farmers Ins. Co.,* 237 Ill.2d 391, 399, 341 Ill.Dec. 429, 930 N.E.2d 943 (Ill. 2010) ("Construction of the terms of an insurance policy" is question "of law properly decided on a motion for summary judgment."). A "court's primary objective in construing an insurance contract is to ascertain and give effect to the intention of the parties as expressed in the agreement" and if the "insurance policy terms are clear and unambiguous, they must be enforced as written." *Schultz,* 237 Ill.2d at 400; *see also Ace Am. Ins. Co. v. RC2 Corp., Inc.,* 600 F.3d 763, 767 (7th Cir. 2010). Under Illinois law, the court "must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *BASF AG v. Great Am. Assurance Co.,* 522 F.3d 813, 819 (7th Cir. 2008) (citation omitted); *see also West Am. Ins. Co. v. Yorkville Nat'l Bank,* 238 Ill.2d 177, ___, 2010 WL 3704985, at *3 (Ill. Sept. 23, 2010). "Unambiguous words in the policy are to be given their plain, ordinary, and popular meaning," but where "the policy language is ambiguous, courts are to construe the policy liberally in favor of coverage." *West Am. Ins., Co.,* 238 Ill.2d 177, 2010 WL 3704985, at 3; *see also BASF AG,* 522 F.3d at 819. Insurance policy terms are ambiguous if they are reasonably susceptible to more than one interpretation. *See BASF AG,* 522 F.3d at 819.

"In Illinois, an insurer has a broad duty to defend its insured in any action where the allegations in the complaint are even potentially within the scope of the policy's coverage." *National Cas. Co. v. Forge Indus. Staffing Inc.,* 567 F.3d 871, 874 (7th Cir. 2009). "On the other hand, an insurer may refuse to defend an action in which, from the face of the complaint, the allegations are clearly outside the bounds of the policy coverage." *National Cas. Co. v.*

*McFatridge,* 604 F.3d 335, 338 (7th Cir. 2010); *see also Nautilus Ins. Co. v. 1452-4 N. Milwaukee Ave., LLC,* 562 F.3d 818, 821 (7th Cir. 2009).

## I.     Insolvency Exclusion

American Automobile first argues that the relevant policies' Modified Insolvency Exclusion bars coverage of any claim arising out of or in any way involving AEG's insolvency regardless of when the financial impairment began or whether McClure Associates, as insured, was aware or could have been aware of the problem. In response, McClure Associates initially contends that American Automobile should be precluded from obtaining summary judgment pursuant to the Modified Insolvency Exclusion because McClure Associates never received a copy of its insurance policies. Not only is there evidence in the record that McClure Associates received a copy of the errors and omissions insurance policy,[1] under Illinois law, "[r]egardless of whether the insured received the policy, an insured is typically charged with notice of the contents of the insurance policy," especially "if the policy was available and the insured was not prevented from reading it." *Maxton v. Garegnani,* 255 Ill.App.3d 291, 297, 194 Ill.Dec. 386, 627 N.E.2d 723 (Ill. 1994); *see also National Prod. Workers Union Ins. Trust v. Life Ins. Co. N. Am.,* No. 05 C 5415, 2010 WL 1292429, at *14 (N.D. Ill. 2010). Accordingly, the Court turns to the merits of American Automobile's policy coverage arguments.

In its motion for summary judgment, American Automobile maintains that the policies' Modified Insolvency Exclusion unambiguously bars coverage under the circumstances because AEG became insolvent during the relevant time period. The Modified Insolvency Exclusion

---

[1] *See* R. 105, Ex. S, Aug. 27, 2007 email from R. Steedman at Lancer Claim Services to B. McClure & attachment.

states as follows:

> In consideration of the premium charged, it is understood and agreed that Exclusion XIV [i]s deleted in its entirety and replaced by the following:

>> Any claim arising out of or any way involving any bankruptcy, receivership, conservatorship, insolvency, or financial inability to pay of any organization regardless of when the financial impairment of such organization began and whether or not an INSURED was aware or could have been aware of the financial impairment of such organization; provided, however, this exclusion shall not apply if the organization in which funds were placed or coverage obtained was:

>> 1.  An admitted Property Casualty Insurance Company rated B+ or better by A.M. Best Company, or a Life Insurance/Accident and Health Insurance Company rated A- or better by A.M. Best Company;

>> 2.  A non-admitted carrier rated A- or better by A.M. Best Company that is also authorized to conduct business in the applicable state in which the coverage was placed or obtained; or

>> 3.  Was guaranteed by a governmental body or bodies or operated by a governmental body or bodies (including but not limited to assigned risk plans, Joint Underwriting Associations, state workers compensation plans, or fair plans) or was a County Mutual reinsured by carriers rated B+ or better by A.M. Best Company or was part of the Iowa Communities Assurance Pools (ICAPs).

(Pl.s' Stmt. Facts ¶ 29.)

American Automobile specifically argues that the AEG claims made against McClure Associates are a direct result of AEG's financial inability to pay the claims based on AEG's insolvency. In short, American Automobile contends that none of the claims against McClure Associates would have arisen had AEG remained solvent. *See Transamerica Ins. Co. v. South,* 975 F.2d 321, 328 (7th Cir. 1992) (claims fall within insolvency exclusion if "they arise out of the insolvency of an organization (directly or indirectly) in which the insured placed the funds of a client"); *see also Transamerica Ins. Co. v. South*, 125 F.3d 392, 395, 398 (7th Cir. 1997) (same). As such, American Automobile asserts that the insolvency exclusion precludes coverage

under the relevant policies.  Indeed, McClure Associates does not argue that the Modified Insolvency Exclusion is inapplicable, but instead relies upon the three exceptions to the insolvency exclusion.

McClure Associates maintains that the third exception to the insolvency exclusion applies because once AEG was in liquidation, the State of Illinois' Director of Insurance began "operating" AEG.  McClure Associates' interpretation of the third exception is without merit.  First, it is the Illinois Insurance Guaranty Fund – and not the Director of Insurance – that "protect[s] policyholders of insolvent insurers and third parties who make claims under policies issued by insurers that become insolvent."  *Virginia Surety Co. v. Adjustable Forms Inc.,* 382 Ill.App.3d 663, 670, 321 Ill.Dec. 214, 888 N.E.2d 733 (Ill. 2008) (citation omitted).  To be covered by the Illinois Insurance Guaranty Fund, however, insurers conducting business in Illinois must contribute to the Illinois Insurance Guaranty Fund in proportion to the company's premium income.  *See id.*  Here, McClure Associates admits that because AEG was never authorized to transact business in Illinois, and thus the Illinois Insurance Guaranty Fund did not cover it.  (*See* Pl.s' Stmt. Facts ¶ 45.)

Second, the third exception to the Modified Insolvency Exclusion lists examples of the types of organizations that governmental bodies operate, including "assigned risk plans, Joint Underwriting Associations, state workers compensation plans, or fair plans."  In general, these types of insurance programs are created by state legislatures, and thus are operated by state governments.  *See, e.g.,* 820 ILCS 305/1.  Unlike the enumerated exceptions, AEG was a private organization.

Third, McClure Associates' interpretation of this exception is without merit because if

the Court were to interpret this exception as McClure Associates suggests, every time the Director of Insurance is involved in the liquidation of an insurance company, any such insolvency exception would be rendered meaningless. *See Continental Cas. Co. v. Donald T. Bertucci, Ltd.,* 399 Ill.App.3d 775, 789, 339 Ill.Dec. 358, 926 N.E.2d 833 (Ill. 2010) ("policy must not be interpreted in a manner that renders provisions of the contract meaningless"). Put differently, a broad reading of the exception to include the Director of Insurance as "operating" a private organization such as AEG during liquidation would swallow the insolvency exclusion because the Illinois Insurance Code vests the Director of Insurance with the authority to act as the liquidator of insolvent insurance companies in Illinois. *See* 215 ILCS 5/193; *McRaith v. BDO Seidman, LLP,* 391 Ill.App.3d 565, 588, 330 Ill.Dec. 597, 909 N.E.2d 310 (Ill. 2009). In sum, because the Director of Insurance is often involved in the liquidation of insolvent insurance companies, McClure Associates' interpretation of the third exclusion is unreasonable and does not introduce any ambiguity that must be resolved against American Automobile. *See Valley Forge Ins. Co. v. Swiderski Elec., Inc.,* 223 Ill.2d 352, 363, 307 Ill.Dec. 653, 860 N.E.2d 307 (Ill. 2006) ("Words are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning.") (internal citation omitted); *see also Continental Cas. Co.*, 399 Ill.App.3d at 789-90 (courts "will not distort the policy and create ambiguity where none exists").

Next, McClure Associates argues that the first and second exceptions to the Modified Insolvency Exclusion *might* apply because there is a genuine issue of material fact whether AEG's A.M. Best Company rating was either A- or B+ as delineated in these exceptions. Not only has McClure Associates failed to set out specific facts pursuant to Rule 56(e)(2) to create a

genuine issue of material fact concerning AEG's specific ratings, there is evidence in the record that A.M. Best Company never rated AEG in the first instance. Therefore, McClure Associates has failed to present evidence creating a genuine issue of material fact that the first and second exceptions apply.

McClure Associates also argues that the Modified Insolvency Exclusion does not apply because the Reinsurance Company of America ("RCA") was the ultimate insurer of the workers' compensation insurance. McClure Associates, however, relies upon its own allegations in its First Amended Counterclaim for the fact that RCA was the ultimate insurer, yet allegations in a complaint are not evidence for summary judgment purposes. *See Nisenbaum,* 333 F.3d at 810. Moreover, the Court takes judicial notice of the Superior Court of New Jersey's order that cancelled the relevant policy RCA issued to AEG in August 2005. *See Opoka v. INS,* 94 F.3d 392, 394 (7th Cir. 1996) (proceedings in state and federal courts are proper subject of judicial notice if proceedings have direct relation to matters at issue). (*See* Pl.'s Ex. T, N.J. Super. Ct. Order, Case No. MER-L-2497-05). Thus, McClure Associates has failed to raise a genuine issue of material fact for trial that RCA was the ultimate insurer under the circumstances.[2]

On a final note, in response to American Automobile's summary judgment motion, Genie argues that its claims in the state court action did not arise out of AEG's insolvency, but out of McClure Associates' negligence in failing to procure proper workers' compensation for Genie. As discussed above, McClure Associates' negligence depends on the insolvency of AEG – if AEG were healthy and solvent, McClure Associates would not be liable for negligence. *See*

---

[2] Even if RCA were the ultimate insurer as McClure Associates maintains, the third exception would not apply because it is undisputed that RCA was not an insolvent organization.

*Transamerica,* 975 F.2d at 330-31. Because McClure Associates is negligent based on AEG's insolvency, the insolvency exclusion predominates. *Id.* Accordingly, Genie's negligence claim is not covered because without AEG's insolvency McClure Associates' conduct would not have caused harm. *See id.* (citing *Gouge v. Central Ill. Pub. Serv. Co.,* 144 Ill.2d 535, 163 Ill.Dec. 842, 582 N.E.2d 108 (Ill. 1991)).

Therefore, American Automobile has no duty under McClure Associates' initial Insurance Agent Errors and Omissions policy and the renewal policies to defend or indemnify the AEG claims, including defending the state court lawsuit brought by Genie.

## II.     Reimbursement of Voluntary Payments

Next, American Automobile argues that the relevant policies do not provide coverage for the payments that McClure Associates made on the AEG claims. To clarify, American Automobile does not take the position that the voluntary payments defense is an absolute bar to all of the AEG claims, but that the policies do not provide coverage for the payments McClure Associates already made. In support of its argument, American Automobile relies on the following insuring agreement for the professional liability coverage:

I.     COVERAGES - PROFESSIONAL LIABILITY AND PERSONAL INJURY:


To pay on behalf of the INSURED all sums which the INSURED shall become *legally obligated* to pay as DAMAGES because of:

A.     Any act, error or omission of the INSURED, or any person for whose acts the INSURED is legally liable, in rendering or failing to render PROFESSIONAL SERVICES for others in the conduct of the NAMED INSURED'S profession as a licensed Insurance Agent/Broker, Notary Public, or Registered Representative, while there is in effect an Agency Agreement between the NAMED INSURED and any Allied Insurance insurer except Western Heritage Insurance Company (hereinafter collectively, Allied Insurance).

13

(Pl.'s Stmt. Facts ¶ 30.) (emphasis added).

Based on this language, American Automobile contends that coverage is triggered when the insured, namely, McClure Associates, becomes legally obligated to pay damages. *See Economy-Wallace Joint Venture v. Commercial Union Ins. Co.,* No. 83 C 6172, 1984 WL 3247, at \*2 (N.D. Ill. Mar. 6, 1984) ("The purpose of the legal obligation clause is to ensure that the insurer only pays that amount which the insured is truly obligated to pay") (citing *J. L. Simmons Co. v. Lumbermens Mut. Ins. Co.,* 84 Ill.App.2d 98, 103, 228 N.E.2d 227 (Ill. 1967)). Here, McClure Associates admits that it did not have a contractual obligation to pay its customers' claims if AEG became insolvent. *See J. L. Simmons Co.*, 84 Ill.App.2d at 107. (Pl.'s Stmt. Facts ¶ 17.) Instead, McClure Associates tendered the workers' compensation claims to mitigate any legal damages. (*Id.* ¶ 19; Defs.' Stmt. Add'l Facts ¶ 15.) Thus, McClure Associates was not legally obligated to make these payments under the insurance contract.

Moreover, McClure Associates did not have a legal obligation to pay its customers' claims under Illinois law. Specifically, pursuant to 735 ILCS 5/2-2201, an insurer has a duty to exercise ordinary care and skill in procuring coverage as requested by the insured. *See Melrose Park Sundries, Inc. v. Carlini,* 399 Ill.App.3d 915, 919-20, 339 Ill.Dec. 591, 927 N.E.2d 132 (Ill. 2010). Because the "duty imposed by section 2-2201 does not obligate an insurance producer to procure a policy for the insured which had not been requested," *see id.* at 920, and the relevant policies do not legally obligate McClure Associates to pay its customers under the circumstances, McClure Associates' payments were voluntary. Therefore, McClure Associates is not entitled to the cost of the voluntary payments it made to mitigate damages. *See J. L. Simmons Co.*, 84 Ill.App.2d at 107. The Court grants American Automobile's summary

14

judgment motion as to the reimbursement of McClure Associates' payments to its customers.

### III. Defendants' Counterclaims

On June 30, 2010, McClure Associates filed a three-count First Amended Counterclaim for Declaratory Judgment seeking coverage under the relevant insurance policies. Because the Court grants American Automobile's summary judgment motion as to its declaratory judgment claims, the Court dismisses with prejudice McClure Associates' counterclaim based on the relevant insurance policies (Count I). Likewise, the Court dismisses Genie's Counterclaim for Declaratory Judgment seeking coverage under the relevant insurance policies. The Court thus turns to McClure Associates' other claims against American Automobile.

In Count II of its First Amended Counterclaim, McClure Associates alleges an improper claims practices claim. The Illinois Insurance Code, specifically 215 ILCS 5/154.6, "lists acts committed by an insurance company that constitute improper claims practices." *American Serv. Ins. Co. v. Passarelli,* 323 Ill.App.3d 587, 590, 256 Ill.Dec. 755, 752 N.E.2d 635 (Ill. 2001). Although Section 5/154.6 defines acts constituting improper insurance claims practice, it does not provide for a private cause of action. *See id.*; *Sarac v. Minnesota Life Ins. Co.*, 529 F.Supp.2d 924, 930 (N.D. Ill. 2007). Instead, the remedy for improper claims practices is in Section 5/155. *See American Serv. Ins. Co.,* 323 Ill.App.3d at 590; *Sarac*, 529 F.Supp.2d at 930. The Supreme Court of Illinois teaches that Section 5/155 "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer v. Ins. Exch. Agency,* 174 Ill.2d 513, 520, 221 Ill.Dec. 473, 675 N.E.2d 897 (Ill. 1996). Meanwhile, in Count III of McClure Associates' First Amended Counterclaim, it alleges a vexatious and unreasonable delay claim pursuant to 215

ILCS 5/155, and thus the Court addresses Counts II and III in tandem.

"The Illinois insurance code allows courts to award costs and attorney's fees to an insured when an insurer's action is deemed 'vexatious and unreasonable.'" *Medical Protective Co. v. Kim,* 507 F.3d 1076, 1086 (7th Cir. 2007). Any such delay, however, does not violate the Illinois Insurance Code if it is caused by a bona fide dispute concerning insurance coverage. *See Rhone v. First Am. Title Ins. Co.,* 401 Ill.App.3d 802, 825, 1204, 340 Ill.Dec. 588, 607, 928 N.E.2d 1185 (Ill. 2010); *Sarac,* 529 F.Supp.2d at 931. As discussed in detail above, based on the circumstances in this lawsuit, there was a genuine, bona fide dispute over coverage in this matter, and thus Section 155 damages are not appropriate. *See Uhlich Children's Adv. Network v. National Union Fire Co. of Pittsburgh,* 398 Ill.App.3d 710, 723, 340 Ill.Dec. 880, 929 N.E.2d 531 (Ill. 2010); *see also American States Ins. Co. v. CFM Constr. Co.,* 398 Ill.App.3d 994, 1003, 923 N.E.2d 299, 308, 337 Ill.Dec. 740, 749 (Ill. 2010) ("'*Bona fide*' is defined as '[r]eal, actual, genuine, and not feigned.'") (citation omitted); *Medical Protective Co.,* 507 F.3d at 1086-87 (same). The Court therefore dismisses with prejudice Counts II and III of McClure Associates' First Amended Counterclaims.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) and dismisses this lawsuit in its entirety.

**Date:** January 21, 2010

**ENTERED**

_____

**AMY J. ST. EVE**
**United States District Court Judge**